Good morning, Your Honors. My name is Robin Price-Robertson with the State Appellate Defender's Office. I represent the appellant in this matter, Mr. Billy Miles. Good morning, Your Honors. Manny McGinsey, Assistant State's Attorney on behalf of the people. Welcome, Mr. McGinsey. Each side has 15 minutes. We don't look at our watches, though, except at the beginning. But it does behoove you to get to your strongest points first. So keep it interesting, and I can assure you we've read the briefs, we're familiar with it, we've looked at pertinent portions of the record, but get to your strongest points. At any time, Ms. Robertson. Good morning. My name is Robin Price-Robertson. I represent Mr. Billy Miles, the appellant in this matter. I intend to confine my remarks this morning to the second issue that was raised in the brief regarding the discovery matter. However, if there are any questions that the court has on the remaining arguments, I would be more than happy to address those as well. This case boiled down to a battle of he said, she said, a credibility contest, where the defendant's ability to attack the veracity of what she said was substantially undermined by the trial court's erroneous ruling which denied the defendant access to statements which were clearly discoverable under the Supreme Court rules. Under those rules, all statements which were attributable to the defendant must be disclosed by the state upon written request. When this rule is violated, this court should reverse the matter if the defendant is prejudiced and if the trial court does nothing to eliminate the prejudice that is inflicted upon the defendant. It is our position that a discovery violation clearly occurred in this case. When Mr. Miles' jury trial was about to begin, there was an in-chamber session where both parties and the judge sat down to discuss numerous pre-trial matters. At that time, the state first said that they wished to disclose that during the preparation of two officers to testify, and the preparation occurred earlier that day, they had learned of two additional statements which the officers were attributing to Mr. Miles, which they planned to elicit during testimony. The state then went on to disclose the substance of those statements, fully complying with the Supreme Court rule. Soon thereafter, the state... But were they, I'm sorry, were they from the police saying it, or were the police saying what the victim said? The police were saying what Mr. Miles said. Okay. This involved an altercation that occurred at the jail after his arrest. Okay. So just to set up that the state had already disclosed a few statements. Soon thereafter, the state said, in addition, we would like to state that while we were preparing the complainant in this case, we learned of new additional statements which the complainant is attributing to Mr. Miles, which occurred before, during, and after the incident, which they planned to elicit during testimony. The state then moved on to a different subject entirely, and when defense counsel asked for the substance of those statements, the court intervened and said, incorrectly, you're not entitled to the substance of those statements. You're only entitled to know the names of the witnesses, which you already had in this case. So you don't get the substance of those statements, which is clearly contrary to the mandate that's imposed by Supreme Court Rule 412. We think that it is indisputable that a discovery violation occurred in this case where the trial court actually intervened and prevented the defendant from learning the substance of numerous statements, which the complaining witness was planning to attribute to him during her testimony. Turning to the remedy, there, again, are two things that this court should consider, whether Mr. Miles was prejudiced, and also whether the trial court did anything to eliminate that prejudice. Addressing the second issue is quite simple. Here, the trial court, in a most unusual circumstance, is actually responsible for the discovery violation in this case. This is not a circumstance where the trial court granted a continuance, or ordered the disclosure of the statements, or provided defense counsel with time to interview the witnesses or any other witnesses in order to prepare. Did the defendant ask for a continuance at that point? The defendant did not ask for a continuance, but it's our position that in this circumstance where the trial judge clearly conveyed that his misunderstanding of the case law, requests for continuance at that point would have been futile. And the appellate courts in the past have held that in similar circumstances, in the case of people v. Tripp, where defense counsel objected to the admission of some undisclosed statements, and the trial court overruled those objections, that the defendant should not be precluded from raising the issue on appeal for failure to request a continuance in that circumstance where it would have been a futile request. And we believe that the same circumstance is true here. Moreover, without knowing the statements, it's unclear what defense counsel would have done with the continuance. You don't know what the statements are, so additional time to, you know, the point is to give counsel additional time to prepare, to discredit the statements, or at least look into the circumstances surrounding those statements. When you don't know the substance of the statements, additional time isn't going to afford you that opportunity. But going back to Tripp, in Tripp, the defense attorney was smart enough to say at the beginning of the case, by the way, Judge, we had discovery, we exchanged discovery, and I want to make sure I'm not going to be surprised in a few minutes with any new statements by my client, or anything that's not contained in this discovery we already received. I don't want to hear anything new. And the state, the judge turned to the state, state, is that right? Oh, no, Judge, we've tendered absolutely everything in this case. And then later on, of course, the state pulls out this, not to rabbit out of their hat, but says, oh, I just learned this. Apparently since I just told you there was nothing new. And as you say, exactly what occurred, that is what occurred. In this case, it's slightly different. The state comes forward and says, by the way, I've just interviewed my victim, and she tells me several things, which are not in the reports, which have not been tendered. And it seems to me, from reading the state's brief, the concern, speaking just for myself, my concern is, how do we know? For this one, we have no idea what was tendered and not tendered. And that is not the fault, I'd suggest, of the trial court judge. That would be the fault, and not of you either, because the defense attorney knows what he was tendered in discovery, and it would be very simple, I'd suggest, that when the victim says A, B, C, and he was tendered A, B, or many, many, probably many more statements, he'd be able to say, listen, I was told about these three and not these six, and that damaged my case. And let me try to explain to you why, Judge, I'm entitled to a new trial. They didn't do that. The only person who was in a position to do that, to know what was tendered and what was new, well, actually, I suppose the state would know that, too, would be the defense attorney, who didn't do that, did he? Well, the defense attorney did specifically request, as soon as the state said that, and then attempted to move on to another subject, Your Honor, we would like to know the substance of the statements which were not disclosed during the discovery process. And that was when the court intervened. Agreed, it's a bit more difficult in this case where we cannot say for certain which statements were not disclosed. We still have a circumstance where the state knew what its obligations were in this case. They had already fulfilled those obligations specific to the statements that were made by the police officer. The state certainly could have walked up to defense counsel after this chamber session and said, I think the court may have gotten that wrong. I'd like to just hand you the substance of those statements so that you're prepared to go to trial. Here, we do believe that though the statements, it's conjecture, it's speculation, I can't, even based on the record and combing through the record and looking for statements which appear to have not been disclosed before trial, I would not feel comfortable saying to this court, those are the statements that the state had, specifically because there were very few statements that were disclosed pretrial. The state referenced the hearing that was held six months prior where there were only one or two statements that were disclosed and those were limited to statements that were made during the time of the attack. The state comes in and says, we have new statements. They're from before, during, and after the attack. We plan to elicit them, indicating that the state felt that they were strong enough in order to craft, to work into their case. Then the state comes forward during opening statements and actually mentions a few statements which were not part of pretrial discovery, as far as I can tell, without access to all of the discovery materials. They say, and they in fact quote Mr. Miles, apologize to the jury for the language that they're about to use and say these are his words, these are not my words, but he holds a screwdriver to her head and, if you'll pardon my language, says, suck my dick or I'm going to drill this screwdriver through your head. The state says that during opening statements.  It thereafter says that after this attack occurs that Mr. Miles changes his demeanor entirely, becomes very sad, very forlorn, is complaining about all he wants is one girlfriend to take care of. And it's the complainant's mental state and streetwise smarts that allows her to escape this circumstance by taking advantage of Mr. Miles' demeanor after this attack, thereby explaining what would be somewhat unexplainable why a rapist would continue to, would walk his victim home and then allow his victim to go into her house where she would have access to other adults, phone, et cetera, et cetera. So the state presents those statements during opening and curiously the complainant doesn't even testify to the statement about drilling the screwdriver through her head during trial, but the statement thereafter uses a similar statement during closing and rebuttal arguments. So we can at least assess that the state believed that there was some weight to these statements and that was their plan to bring them in. Complaining witness also in this case, her testimony was made up of the conversations that she was having with Mr. Miles over the course of the evening, how he acted before the encounter, how he acted at the house, horrific things that he said to her while the incident was taking place. Thereafter, how he was behaving and how she was able to convince him that she wanted to be with him in the long term. And we should consider that, should we not? It's the nature of the attack. It's not a case of an armed robbery where somebody walks up and says, give me your money or I'll blow your brains out. And then at trial says, oh, and by the way, he also said he'll kill my kids, where it takes them all of a minute or two. This is a course of conversations over a period of hours, is it not? Exactly. And so in looking at that, does it help your case or hurt your case that not everything the victim said was tendered to the defendant in advance of trial? We certainly, we understand that state is not required to provide a verbatim script. This is exactly what the complaining witness is going to testify to. These are the exact statements in the exact order. But they are required to convey the substance of those statements. And when before trial, all you really have is a couple statements about, for instance, when before trial, and again, I ask you to forgive my language, but before trial, the state alleged that Mr. Miles turned off the light and said, I'm going to fuck you in every hole that you have. And at trial, the complainant said and insisted that, no, the language was I'm going to hit you in every hole. Well, the substance of that statement was conveyed. I don't think that we would have a very strong prejudice argument if that was the only statement that had changed. But now we have statements that are being made before trial and after trial, which the state is relying on to either show force or to explain the unexplainable as to why he would escort her home. And we think that that actually strengthens our case here because even though we don't know the exact statements, we know that very few statements were disclosed and that a litany of statements actually came to light during trial. And Mr. Miles, not knowing those statements, was unprepared to, for instance, speak with the other witnesses who actually did testify beforehand and find out whether they had heard this statement before, whether this was a brand-new statement. But they only apply to the statements that theoretically were said by the victim and defendant in the presence of others. And were there many of those statements? It was my impression he was left on the front porch, and he sees her standing outside of the business. So it's just the two of them. He comes back after 40 minutes. Then when they're together after their assault, he's on the front porch while she goes in and tells Mom what happened, and they call the police. So how many statements would there have been, perhaps in front of the sister? Well, they could have found out whether she mentioned any of these statements to, say, the examining physician or any of the reporting officers to find out. Because there were some statements that were impeached, because defense counsel knew the threat that was disclosed before trial was I'm going to kill your family. The threat that is disclosed at trial is, oh, I'm not going to kill your family. I'm going to kill everyone in this house, which explains conveniently why the complainant would not cry out, having just met Mr. Miles' sister and having just seen another woman and a young child in the house. So with knowing what threat was actually disclosed to the examining physician, defense counsel was able to say, you know, Doctor, was this threat explained to you during your interview with the complainant? And the doctor said, no, the threat was a threat to her family, and also asked the detective whether that threat had come to light. No, that threat hadn't come to light. So you can at least explore prior consistent or inconsistent statements. There are other statements that when they were speaking in front of the liquor store, there were people that came back and forth. There were two acquaintances of the complainant who showed up and who purchased liquor, and she made out their initial interaction to be very friendly. He was asking her name, and the state turned that in. Their argument said, this is his tool. This is his weapon. He uses trust in order to lure his victims to his sister's house. So there were people standing there. Perhaps we could find out whether they were, in fact, talking about her health conditions, whether they did talk about her children, whether he was showing interest. But she didn't say the victim did not testify. She was threatened to get in the car, right? She testified. No, I'm sorry. Go ahead. No, you go ahead. Did she testify? No. She didn't say he was, she said, but she didn't say at trial there was any threat coming into the car. But she did say they stood outside of this liquor store for a half hour for quite some time where they were chatting each other up and getting to know each other, and he's asking her name and he's asking to know more about her. And if there were these other, you know, there was testimony that there were other people around, those people presumably may have been, you know, defense counsel doesn't know. Maybe they exist. Maybe they don't exist. But perhaps she's not prepared to address those statements. But what could have been said that was irrelevant to impeach her, right? So what you're looking for is impeachment against things that the defense attorney is not aware of. But, again, I think you'd be aware of, we don't have the police reports, that they met, were outside for a while outside of this business. So what would have occurred there that would have helped the defense case where a witness would have come out, say, from the currency exchange or wherever it was and say, oh, as I came out they were chatting each other up. That won't help. Since she didn't testify, he had a screwdriver to my neck and said, get in the car. I can't imagine what a witness could have said that would have helped the case at that point since they were just talking to each other. Could have said that, no, that actually wasn't, you know, they actually were acting like they'd known each other for quite some time. It was her contention that they had just met that evening. He said, we've known each other for three weeks. We've been involved in a sexual relationship where we're exchanging sex for drugs. You've got someone else there who comes up and says, oh, yeah, they were talking about something that happened two weeks earlier between the two of them. They weren't talking. And, again, this is all speculation. And turning to what happened afterwards, her contention is she manages to convince him that she loves him and that she wants to be with him. She's going to be his girlfriend. But that's after she's raped, right? But that's after she's raped. But, again, what we're talking about is his ability to discredit the statements that were not disclosed. And there were other individuals who were in the house. Perhaps the 17-year-old or the sister could have said, no, actually, they didn't come out looking like they had discovered this new love for one another. They came out and looked like business partners. But they're relatives of him, right? It's his sister. We don't know who the 17-year-old is. It is his sister. Right. But since we know who that is, I don't see how his case is harmed or prejudiced by the fact that his sister, who didn't say anything in this case, could have said something about what she may have overheard in the bedroom. I don't think that. But she was always available. He knew who she was, his sister. If she's going to help me, I'll call her. Right. But at the same time, it's our conviction that the evidence in this case was incredibly closely balanced. You have a he said, she said situation. And you have evidence that it is our position supports Mr. Miles' theory or version of events even more strongly than it does the complainant's. But we think, at a minimum, we're talking about a fairly balanced scale in this case. And the jury at the end is left with this credibility contest. And it's hard to say at this point. I mean, that's why courts have said that the ability to measure the prejudice, it's speculative. It's incredibly difficult. How much, you know, in a case like this, a few minutes, you know, time to interview, time to look for some witness who could impeach and say, oh, no, she never actually said anything before about, you know, about him trying to being a baby and wanting to be his girlfriend at the end. When we talked to her, all that she had to say was she said, I had to go check on my grandmother. You have to let me go so I can go check on my grandmother. So then you're actually able to not only to spread it, you know, what they knew about ahead of time, but also to say, okay, no, this is actually brand new. In addition, there are statements. We believe that there are statements the state learned about the morning of trial, which the complainant then failed to mention during trial testimony. And I remind the court again of this drilling a screwdriver through your head. It's a difficult strategic decision to make. But had defense counsel known those statements, defense counsel would have been able to say, didn't you tell the assistant state's attorney something different this morning? And being able to impeach through a police officer to say, you know, two hours after the incident, did the complainant tell you X, Y, Z? No, she didn't. Well, the state can then turn around and say, you know, we're talking about a woman who's just been horrifically attacked. We don't expect her to give a verbatim account. She's not being interviewed in detail at that time. Jury, you can set that aside. You can set the failure to mention that to the police officer aside. It's an entirely different method of impeachment. And also, our contention is a much stronger impeachment to say, two hours earlier wasn't your story X, and now that you've taken the stand you've actually omitted that statement or you've changed the nature of that statement or you didn't even mention this when you talked to the state two hours earlier. Having those statements in a case where the state's case relied primarily on the testimony of a woman who changed her story, numerous prior inconsistent statements, we have problems with the evidence, it's very hard to say and we contend because of that weighs in Mr. Miles' favor what prior access to those statements would have enabled the defense counsel to do in this case and numerous means of either attacking those statements or using them to impeach her trial testimony. Part of your position is that although you knew about the screwdriver and you knew about all the people in the house, you just didn't know what words she spoke or what she said or what he allegedly said to her. Exactly, exactly. And because she disclosed so many, his position is none of this took place. They showed up, they had some food, he provided her with some drugs, they had an argument over whether he was willing to exchange drugs for sex. He was unwilling to do so because she was menstruating at the time. She tried to persuade him. Those facts are all in the brief. His contention is going into this. He doesn't know what she, if his story is correct, he doesn't know what she's going to say occurred during the attack. We know that she said something about a screwdriver and that he threatened her with a screwdriver. Drilling it through her head is, there's a reason the state chose to use that when they made their opening statement and quoted him and then in closing said, do you want to know what evidence of force is? Evidence is I'm going to shove this into your head or I'm going to drill this into your head. They mentioned it both in their closing argument and their rebuttal argument. There's a way to that statement. You know going in that she said she was threatened with a screwdriver. So the wording, I'm going to shove it through your head or whatever he's going to do with it, I kind of brought it. If you were given time to look through all of the discovery materials, comb through them in detail, make sure that you are correct about this impeachment and then to say, complaining witness, you just testified to this this morning and now you've conveniently left it out of your testimony. It's a dangerous road. But that's where your impeachment would come from, not from what she said to him or he said to her because he testified. So he would have said that never happened. We were lovey-dovey as we had been, although he also testified I wouldn't touch her, she disgusted me. Like any case, which is the way life works, it's hard to believe. That's why we have juries. So everything he said, what impeachment he could supply to impeachment, that's not what was said. Here's what was said. Here you're saying your client was deprived of the impeachment which should have been available based on a memo that should have been written up by the state's attorney based on his interview that morning with the victim. He should have tendered a memo on it and then the defense would have been able to use that memo to cross-examine the victim when she left out portions of that memo, right? That's one of the ways that this would have been used. Okay. I suppose that's the only thing so far I've heard that would actually work. And it probably would work. But can you cite a case with a proposition that it has to be done that way? Again, understand all the cases we see, they don't tend to be rape cases. The Hood case is an expert who knows about reverse extrapolation on drunk drivers. Harper is an accident where the defendant is in custody for a long time and it's not mentioned in the police report. He says he's driving, although it does say, by the way, I don't have insurance, which is what he said, that he was not driving a car. Anything else? I would just say that there are other means, there are other things, either impeaching through potentially prior and consistent statements given time to interview the witnesses who are going to testify and say, detective, can you just let me know whether this was said to you before. Given appropriate time, given the substance of those statements, defense counsel could have prepared to actually impeach or impeach through prior and consistent statements through the other witnesses. But because a cardinal rule of cross-examination is you need to know the answer to the question before it's asked, it's dangerous territory to go into that and have potentially, you know, it turns out that the witness actually corroborates this. Oh, you know, she actually did mention that soon after the attack. But it's a police report, so did you write that down? So she told you, officer, that she was going to get stabbed in the head, this guy threatened to drill her in the head? Yeah, she did. And you left that out of your report? Yeah. And that's what impeachment is to police officers. True, there is impeachment through that means, but arguably police officers often are able to very convincingly say, I don't write everything down, exactly. And then on the flip side, again, you know, if she is suddenly saying, oh, there's this romantic element that doesn't come out until trial, that suddenly it's not just I have to check on my grandmother, but it's we're going to be together forever and that's why he believes me and leaves with me, then suddenly maybe your decision not to call the 17-year-old would have changed and you'd say, okay, wait a second, I need to get this woman in here to explain that when they left, they were looking at the drugs and trying to, you know, whatever it may be. Again, this is all speculation. It's incredibly difficult. And the factors that this court is charged with considering include the closeness of the evidence, the willfulness of the state, other factors, in addition to what would defense counsel have done. And in the Tripp case, the court actually didn't even look at that. They said, you know, they said the prejudice resulting from surprise, unfairness, and inadequate preparation, as well as from the lack of opportunity to investigate the circumstances surrounding undisclosed alleged statements is so incalculable that it cannot be conjectured by the court. They didn't thereafter say this is what defense counsel could have done, would have done with the time. They basically laid that out there and walked away. We do believe that there is something that defense counsel could have done in this case given proper notice of these undisclosed statements and that, you know, they were denied that opportunity in a case where the evidence was closely balanced. So I understand your position. Your position is that the defendant was so prejudiced by the state's failure to disclose these statements that he was denied a fair trial. Is that your position? That he was. Exactly what I said. Pass it for a couple hours. I want him to write out in a memo form everything that she's just told him during the prep because I want to know about it. And I'm entitled and a judge with hope would say that's a good idea. A case is passed for a couple hours. Write it out to Mr. State's attorney and tender to the defense. Nobody brought that up. And the judge could have given a continuance. They should say none was asked. But when the judge said, and the judge firmly said, no, no, this is all pre-stuff. We're not going to go down that road. You're only entitled to the substance of it. You're only entitled to the name. It's not even the substance. You're entitled to the names of the witnesses, which I'd suggest is wrong. So without even the exclusion of it, because I would agree we'd never get to exclusion, but they had a chance for a continuance or at least a tender to discovery. You know, Mr. State's attorney prepped her. Now you know they were together for four or five hours. Guess what? There's five pages of statements, the ones you want to use. Actually, you should tender all five pages to the defense, because having prepped thousands of witnesses, you write it out. And when you get it right out, when you go to a Xerox machine, Xerox that thing, tender to the defense. Here's what she told me an hour ago. How hard would that be? Well, first of all, I think that to tender all the State's notes would invade the work province possibly. Of a witness right before they hit Mr. Regency? If that hit, oh, Mr. Oh. He's lucky to have a law license, I'd suggest to Mr. Regency. But the point is this. The defense could have done that, but didn't. The defense during the examination never once raised an objection. So if there had been a statement that the defendant wasn't aware of, it obviously wasn't used during trial. The only evidence that was offered during trial, the defendant, there were objections to some of the testimony, but none on the basis that, gee, this statement was never disclosed to me. So the defense could have asked for a continuous, might have been denied, could have asked for the judge to pass it for a couple of hours so that it talked to the State's attorney, could have asked the judge, as you suggest, Your Honor, to write out a summary, not verbatim, but a summary of what the victim had to say about what the defendant said to her, but didn't do that. But not having done that, it's speculative, as counsel has acknowledged rather forthrightly, speculative in the extreme as to what statements we're talking about. And where we can't identify those statements, how can you assume that an unidentified, unobjective statement was a source of any prejudice to the defendant? Counsel, I'm just a little confused this morning. Sure. Were there statements that the State was supposed to tender to the defendant that they didn't tender? I think, arguably, the only thing I'm aware of came from the hearing on the motion in limine six months before trial. But I'm talking about on the morning of the trial, when the State discloses that they just interviewed a witness, they have some additional statements. Were there statements that were not disclosed to the defendant? Is that true? I assume that since the State's attorney said it in chambers before trial, it was true. But I'm not privy to it either, Your Honor. I get it that we don't know what statements we're talking about. But there were statements that should have been tendered. Reportedly, there were statements, new statements of the victim. But like I said, because reading the record on the whole, it may very well be a reiteration of the statements that were alluded to at the motion in limine. But we don't know. That's it. We don't know. I don't know. The defense doesn't know. And when you don't know what it is and there was no objection made, how can you assume that something we can't identify and that nobody objected to was prejudicial? I think the answer to that is you can't find it was prejudicial. I think the defendant had a fair trial, not a perfect one, but a fair one. He was convicted fairly based on the evidence. The statements he made that were offered in evidence against him were statements he clearly was aware of, that if there had been any additional undisclosed statements, they weren't offered in evidence because it seems to me, regardless of what you did in chambers, I mean, I spent 13 years as a felony trial lawyer in the state's attorney's office, and I know that even when you have a pretrial conference in chambers, you go out and pick a jury, if somebody does something, you still object to it at the time it's offered in evidence. But you would also know you tender it. So if you're going to have, especially where these states are being forthright, I've just interviewed this victim. There's statements. I should probably say many because there probably are many statements. There's probably five sentences of statements in the police reports. I've interviewed her now, and now I've got to put her on direct for 45 minutes. There's going to be many more statements, and the ones that are significant, I'd suggest he is obligated to disclose those, whether it's reversible. I agree. I agree. I'm not saying that Rule 412 only applies to states' attorneys in cases that I'm not involved with. I agree. The 412 applies to me and every other assistant state's attorney. The trial court doesn't seem to be aware of that. And I agree that there are remedies that the judge could have fashioned, such as those you suggest, you know, would write out a summary of what the witness told you, what the victim told you. So are you saying, counsel, that 412 was not violated in your opinion? I'm saying based on the record that we have before, that is before this Court, it appears to me that 412 was substantially complied with because the statements, the only statements the witness testified to that the defendant made were those statements that were identified at the hearing in the motion limiting. Now, was it formal, you know, did I give you a piece of paper with the defendant made the following statements? No. But was the substance of the statements disclosed to the defendant, and those are the only statements that the witness testified to? The answer to that is yes. And it was six months before trial at the hearing in the motion limiting. So my answer to your question, Your Honor, is yes, it was substantially complied with. It wasn't complied with in a formal written manner, but it was the statements were identified, the statements offered at trial were identified, and only those statements were offered at trial. And with respect, as I said, to the statements of the assistant state's attorneys in opening statement, I think the jury was properly instructed that any evidence, any statement of an attorney that's not borne out by the evidence should be disregarded, and that the closing comments were fair inferences based on the testimony that the jury had heard. So my answer is yes, I think the 412 was substantially complied with, and as the claim is entirely speculative, there's no way the defendant can establish, even if there was a violation, that he was prejudiced by it. He can't point to a single statement, hasn't pointed to a single statement that the witness made. But she can't. She's not in a position to. Exactly. There's nothing there that prejudiced the defendant. That's how she's not able to do it because she wasn't prejudiced. She's not able to do it because she doesn't have the records made by lower counsel. If the defendant made a statement that was prejudicial, but the people didn't offer it, I don't see how this. Didn't disclose it, you mean. It didn't disclose it, but we also didn't. First of all, we don't know that there was such a thing, but assuming for the sake of. Well, the state's attorney said there was, so. No, the state's attorney said that I've learned there were statements that the defendant made to the victim. It didn't identify what. And it's at least a fair inference that it's the same statements that were made, that were identified earlier. But even assuming. You mean in the motion to eliminate. At the motion to eliminate. But the point is this, the defendant cannot demonstrate prejudice from an undisclosed statement where no undisclosed statement was offered at trial and no objection was made to any statement that was offered at trial. So I believe, A, that 412 was substantially complied with, and B, the defendant cannot establish any prejudice as a result, even if there were a violation of 412. Therefore, defendant's convictions were proper and must be affirmed. Thank you. Thank you. Ms. Robertson, briefly. Thank you, Your Honor. Very briefly. Just to address first counsel's point that it's possible that there was some conversation between defense counsel and the state's attorney after this hearing. Defense counsel brought this up in the motion for a new trial and specifically stated that the state was required to disclose the statements and never did believe that, would like to think that abiding by ethics and ensuring there were grounds for the arguments that were being made in the motion for a new trial, that counsel would not have said that if the state had actually thereafter complied with its duty. And the state didn't reply in the motion to trial. No, I did too. He's actually the one who brought it forward before trial, so there's new stuff and I've never tendered it. Unfortunately, there was no discussion, no argument on the motion either, so we're left with very little. In addition, I do believe that it's a disingenuous reading of the facts to say that there was substantial compliance because something was disclosed at a hearing six months earlier and that was an umbrella that covered everything that came forth at trial. At that hearing, the complaining witness didn't testify. She presumably wasn't prepared to testify at that hearing, and very few statements came out during that hearing. The state basically relied on the police reports in order to make its argument that other crimes evidence should be admissible. Then, come the morning of trial, the state specifically says, we have learned of additional statements which were not in the police reports. I think it's quite clear that there were new statements which the state should have disclosed, which it failed to disclose to the defendant upon the defendant's request. I do believe that it's a fairly clear violation of Rule 412 in this case. Insofar as objecting to the statements that were made during trial, that certainly would make your jobs easier, my job easier, if defense counsel had objected each time a new statement came to light during trial. However, the judge had already made his position on this matter fairly clear. The state defense counsel had just presented a fairly simple request, saying I'd like to know the substance of those statements, and the judge inexplicably intervenes and says, oh, no, no, no, you don't get the substance of those statements, thereafter rendering any request for continuance futile because defense counsel doesn't have those statements, and arguably rendering any objection at the trial somewhat futile because we already know the judge is under the misperception that these statements were not discoverable and thus arguably not objectionable at trial. So I don't think that because counsel chose not to object to the litany of statements that were attributed to Mr. Miles over the course of the complaining witness's testimony, that that necessarily means that all of these statements were either disclosed or that none of these statements were actually new statements that had not come up during discovery. Again, my only other point would be counsel suggested that, well, defense could have done this, defense could have requested this, defense could have asked for continuance. I would reiterate that the responsibility in this case was with the state. The rule specifically says that the state is required to disclose the substance of all statements which are attributable to the defendant, not necessarily those that they definitely plan to come up at trial, all statements. That was the state's responsibility in this case, and though we say here that the judge is the actual culprit, the one who intervened and made the statement and kind of cut the state off from fulfilling their duty, the state still knew what it was supposed to do and could have complied with the rules and rendered this argument completely moot at this point. So for all of those reasons, all those stated in the briefs, we would ask that this Court reverse Mr. Miles' conviction and remand the matter for a new trial. Thank you. Thank you very much. Thank you for the arguments and the briefs. This case will be taken under advisement and this Court will be adjourned.